IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 1:23-mj-157 (RDA) |
| ) | |
| AARON ALEX MITCHELL, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on the government's Emergency Motion for Stay and Appeal (Dkt. 19) of United States Magistrate Judge Ivan D. Davis' Order Setting Conditions of Release as to Defendant Aaron Alex Mitchell (Dkt. 14). Defendant has filed an Opposition. Dkt. 23. Considering the Motion, Defendant's Opposition, as well as the arguments raised by counsel at the hearing held before this Court on August 23, 2023, this Court GRANTS the Government's Motion and REVOKES the Order Setting Conditions of Release for the reasons that follow.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is 38-years old and resides in Phoenix, Arizona. Based on the information that Defendant has provided to pretrial services, Defendant has been a resident of Arizona for twelve years. However, Defendant has resided at his current residence for approximately two months and, when asked by pretrial services, could not recall his current address. Defendant has no family in the United States; Defendant's father, sisters, and one brother all reside in Jamaica. Defendant's other brother lives in Japan.

Defendant informed pretrial services that he had a valid U.S. Passport and that his only foreign travel within the past 10 years was to Jamaica for his mother's funeral. Since that interview, it has been determined that Defendant also has a Jamaican Passport and a U.S. Passport

card.[1] Defendant now also concedes that he has traveled to Mexico on at least two occasions in 2022, although the government proffers that Defendant has made multiple border crossings into Mexico, including two occasions in 2023.

Defendant informed pretrial services that he lost his employment during the pandemic and that he remains unemployed outside of "side jobs" that he performs. Defendant reports that he receives $3000 a month of income from his side jobs. Defendant does not know his rent payment. The government proffers that Defendant's income is sometimes as much as $25,000 a month. Defendant admits to being a daily marijuana user and a cocaine user. Defendant also reports owning a firearm.

As part of its investigation of a drug trafficking conspiracy, law enforcement identified packages being sent from Arizona to Northern Virginia as containing illegal drugs. An alleged coconspirator, who was arrested in March 2023, identified Defendant as the source of supply that has been mailing fake oxycodone pills from Arizona to this District. 8.14.23 Hrg. Tr. at 22:14-20. A review of that coconspirator's cellphone revealed messages with pictures of what appears to be illegal drugs and messages discussing shipments of packages from Arizona to this District from a number believed to be used by Defendant. Dkt. 2 ¶14. Defendant was also observed, via United States Postal Services ("USPS") security footage mail, mailing a package that was later intercepted and determined to contain over a kilogram of fake oxycodone pills. 8.14.23 Hrg. Tr. at 15:3-16:1.

On August 10, 2023, law enforcement executed a federal search warrant on a location that they had been surveilling and arrested Defendant and another alleged coconspirator inside. Law enforcement also located over 50,000 suspected fake oxycodone pills, 2 kilograms of suspected

---

[1] At the August 23, 2023 hearing, there was a dispute regarding where the Passport Card is located. Defendant contends that it is in the possession of the government because it was in his wallet at the time of his arrest. The government has proffered that it does not believe that Defendant's wallet was seized and that the government does not believe that the Passport Card is in its possession.

2

fentanyl powder, 1.5 kilograms of suspected cocaine, and a bulk amount of marijuana as well as firearms. 814.23 Hrg. Tr. at 8:23-9:4. Law enforcement described that, when Defendant was arrested, Defendant appeared to be reaching for a firearm that was hidden beneath a couch cushion. *Id.* at 9:8-10:2.

That same day, Defendant was charged by Criminal Complaint with one count of conspiracy to distribute 400 grams or more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dkt. 1. On August 14, 2023, the parties appeared before Judge Davis. *See* Dkt. 13 (Minute Entry). After a hearing, Judge Davis ordered that Defendant be released on a personal recognizance bond, subject to the standard conditions of release as well as certain special conditions, including: (i) a third-party custodian; (ii) home detention; (iii) location monitoring; (iv) surrender of his passport; (v) no contact with potential witnesses or the alleged coconspirators; and (vi) travel restrictions. *See* Dkt. 14 (Order Setting Conditions of Release). On motion by the government, Judge Davis stayed Defendant's release until August 16, 2023 at 5:00 p.m. *See* Dkt. 18 (Order Granting Temporary Stay). On August 16, 2023, this Court issued an order staying Defendant's release pending a hearing on the government's motion to revoke Judge Davis' Order Setting Conditions of Release. Dkt. 20. On August 23, 2023, this Court held a hearing on the government's appeal of Judge Davis' Order Setting Conditions of Release.

## II. STANDARD OF REVIEW

18 U.S.C. § 3145(a) allows this Court to revoke a magistrate judge's release order. It is uncontested that in doing so, the Court reviews the magistrate judge's determinations *de novo. See e.g. United States v. Clark*, 865 F.2d 1433, 1438 (4th Cir. 1989); *United States v. Burgess*, 2:17-cr-153, 2017 WL 6542939, at *1 (E.D. Va. Dec. 19, 2017).

Because Defendant is charged with an offense that carries a ten-year mandatory minimum sentence, a presumption in favor of detention arises. 18 U.S.C. § 3142(e)(3)(A). Once triggered, the presumption imposes a limited burden of production on the defendant to come forward with some evidence that he does not pose a danger to the community or a risk of flight. *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). When a defendant meets his burden of production, that "does not eliminate the presumption favoring detention." *Id.* If the defendant meets his burden of production, the burden shifts to the government. When risk of flight is the basis for detention, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (*per curiam*) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). When the safety of the community is the basis for detention, the government must prove dangerousness by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). The government need only establish one basis for detention.

Under 18 U.S.C. § 3142(g), the Court must consider four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) The weight of the evidence against the person; (3) The history and characteristics of the person, including: The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

### III. ANALYSIS

In this case, there is a presumption of detention and, therefore, the initial burden is on Defendant to come forward with some evidence that he is both not a danger to the community and

4

not a risk of flight. Defendant argues that he has "met his burden of production with the proposal that he be released into the custody of his proposed third-party custodian, Ms. Breannah Worthy, and placed on home detention with location monitoring." Dkt. 23 at 4. The government argues both that Defendant has not overcome the presumption in favor of detention and that Defendant represents a danger to the community and a risk of flight.

## A. Defendant Has Not Overcome the Presumption of Dangerousness

Defendant relies on the imposition of home detention and a third-party custodian to overcome the presumption of detention. Dkt. 23 at 4. Those conditions may successfully rebut the presumption as to risk of flight, but those conditions do not limit the danger that Defendant presents to the community, especially where it is alleged that most of Defendant's drug trafficking activity was done by electronic means and through the U.S. mail.

Defendant appears to assume that because his offense is nonviolent it is therefore not dangerous. Not so. As judges within this District have recognized "the fact that Defendant is charged with a nonviolent offense is not enough, standing alone, to rebut that he is a danger to society." *United States v. King*, 2020 WL 1915241, at *4 (E.D. Va. Apr. 20, 2020). Moreover, courts recognize that "[f]entanyl distribution poses a grave danger to the community." *United States v. Texeira-Spencer*, 2021 WL 1535309, at *4 (D.D.C. Apr. 19, 2021); *see also United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("The court must also consider the danger of trafficking in illicit drugs. When determining whether to detain defendant the court must, in essence, make a prediction as to whether defendant is likely to traffic in illicit drugs if released pending trial based on, *inter alia,* the factors prescribed by the Bail Reform Act.").

Moreover, the suggested conditions of release do not ameliorate the danger that Defendant will continue trafficking drugs. This especially true where Defendant's role in the alleged drug conspiracy was facilitated primarily by the U.S. mail and electronic means. *See United States v.*

*Elliott*, 546 F. Supp. 2d 643, 645 (S.D. Ind. 2008) (noting that "travel restrictions or a curfew would be meaningless in the face of a telecommunications network with associates that allows drug trafficking to continue from remote locations"). Defendant has introduced no evidence that would satisfy his burden of production with respect to dangerousness. On the other hand, the government has offered evidence showing that Defendant has no verifiable sources of income, has a drug problem, is involved in trafficking large quantities of illegal drugs, and was not fully truthful with pretrial services.[2] The government also proffers that Defendant evinced his commitment to drug trafficking when Defendant continued to engage in drug trafficking after three of his alleged coconspirators were arrested. *See* Dkt. 19 ¶ 12 (discussing events indicating a likelihood that law enforcement was scrutinizing Defendant's alleged activities). Importantly, Defendant concealed his travel to Mexico from pretrial services and, even in his Opposition brief, Defendant did not admit to all of the travel to Mexico of which the government is aware. Moreover, at the August 23, 2023 hearing, the government proffered that text messages from Defendant indicate that Mexico is connected to Defendant's alleged drug trafficking and proffered evidence that Defendant's explanation for his travel to Mexico – for leisure – is not accurate. The government also proffered that Defendant is the highest-ranking member of the conspiracy to be arrested. Thus, Defendant has not rebutted the presumption as to dangerousness and detention is appropriate. *See United States v. Reuben*, 974 F.2d 580, 587 (5th Cir. 1992) (reversing order of release, in a presumption case, where the defendants "presented absolutely no evidence whatsoever to indicate that they will not continue to engage in drug trafficking if released on bail pending

---

[2] The government has proffered evidence that Defendant made misrepresentations to pretrial services regarding: (i) his international travel, because Defendant did not originally report his travel to Mexico; (ii) his travel documents, because Defendant did not originally report or turn over his U.S. Passport Card or his Jamaican passport; and (iii) his income, because Defendant did not account for large deposits to his bank accounts beyond the funds he reported to pretrial services.

trial"). Accordingly, the government's motion will be granted, and the Order Setting Conditions of Release shall be revoked.

### B. The Government Has Established that Defendant is a Risk of Flight

The government has established that Defendant is a risk of flight by a preponderance of the evidence based on the § 3142(g) factors. The Court will address each factor in turn.

#### 1. The Nature and Circumstances of the Offense

Here, Defendant is charged with a very serious drug offense; namely, conspiracy to distribute 400 grams or more of a substance containing fentanyl. The parties agree that, if convicted, Defendant is subject to a 10-year mandatory minimum sentence. Under similar circumstances, judges within this District have found "the penalties at stake in this case provide a strong incentive to flee." *United States v. Maitland*, 2020 WL 1929133 (E.D. Va. Apr. 21, 2020). Defendant asserts that he is safety valve eligible, such that the seriousness of the penalties is reduced. Dkt. 23 at 7. But courts do not place heavy reliance on the availability of the safety valve in making such determinations. *See United States v. Martinez-Espinoza*, 2020 WL 2767520, at *2 & n.1 (S.D. Cal. May 28, 2020) (noting that there is "no determination whether the Defendant is safety valve eligible" and that, even with a safety valve, a "defendant with the drug amounts involved in this case is facing a significant Sentencing Guideline range, which is enough to elevate the risk of flight").[3] Moreover, this is a drug case where, after the arrest of three coconspirators, Defendant changed his practices in an attempt to evade law enforcement and to continue selling drugs. *See United States v. Portz*, 2020 WL 1862364, at *4 (D. Minn. Apr. 14, 2020) (finding defendant to be a risk of flight based, in part, on his efforts to evade law enforcement detection

---

[3] The government disputes that the safety valve applies because Defendant appears to be a manager or organizer and because Defendant has firearms that may be connected to the conspiracy.

7

and the extent of his drug trafficking ties). Thus, the potential penalties at issue in this case elevate the risk of flight.

## 2. The Weight of the Evidence

Defendant argues that the weight of the evidence is among the "least important criteria" for purposes of detention. Dkt. 23 at 7. There is a split among courts about the weight to be placed on this factor. *Comp. United States v. English*, 629 F.3d 311, 317 (2d Cir. 2011) (affirming detention order which observed that the weight of the evidence "is one of the most important factors") *with United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (finding the weight of the evidence to be the least important factor). There is no Fourth Circuit authority on this point. This Court joins with the only other district judge within this Circuit that appears to have addressed the issue and will consider this factor and weigh it equally along with all of the other factors. *See United States v. Shaheed*, 455 F. Supp. 3d 225, 232 (D. Md. 2020) ("Here, the Court considers it and weighs it along with the other Bail Reform Act factors.").

In the instant case, the government's evidence appears to be strong, which increases the risk of flight. Defendant incorrectly characterizes the government's evidence as limited to the pills seized during his arrest. To that end, Defendant argues that only a small number of pills were visible at the time of arrest. Defendant may have a point if that were all of the government's evidence. The government, however, also put on the testimony of Special Agent Drew. Special Agent Drew testified at the detention hearing that, an alleged coconspirator, identified Defendant as the source of supply that has been mailing fake oxycodone pills from Arizona to this District. 8.14.23 Hrg. Tr. at 22:14-20. A review of that coconspirator's cellphone revealed messages with pictures of what appears to be illegal drugs and messages discussing shipments of packages from Arizona to this District from a number believed to be used by Defendant. Dkt. 2 ¶14. Defendant was also observed, via United States Postal Services ("USPS") security footage mail, mailing a

8

package that was later intercepted and determined to contain over a kilogram of fake oxycodone pills. 8.14.23 Hrg. Tr. at 15:3-16:1. Defendant was also observed, via USPS security footage, mailing other packages from Arizona to the various residences in Northern Virginia where other coconspirators resided and where law enforcement was making controlled drug purchases. Dkt. 2. Thus, the government has strong evidence of Defendant's role in the conspiracy.

This evidence of Defendant's specific involvement in the conspiracy is combined with the government's evidence of the conspiracy overall, which includes a great deal of information gathered through surveillance, confidential informants, and other alleged coconspirators. Dkt. 2; *United States v. Boccone*, 556 F. App'x 215, 244 (4th Cir. 2014) (holding, in the context of a drug conspiracy, a "defendant is responsible not only for his own acts, but also for 'all reasonably foreseeable acts' of his co-conspirators"). Indeed, Defendant recognizes that the evidence against other alleged members of the conspiracy is "quite strong." Dkt. 23 at 8. Additionally, not only does the government have evidence tying Defendant's alleged coconspirators in Northern Virginia to the conspiracy and to the drugs, but the government also has evidence tying Defendant's girlfriend[4] in Arizona to packages sent from Arizona to Northern Virginia as part of the conspiracy. Dkt. 2 ¶ 30. Until two months ago, Defendant resided with that girlfriend in Arizona and she was in frequent contact with Defendant. *See id.* This evidence of the general conspiracy further supports a risk of flight. *See United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010) (noting that when "the evidence of guilt is strong, it provides" a defendant "with an incentive to flee").

### 3. History and Characteristics

Defendant emphasizes that he has no criminal history and that he has presented a third-party custodian with no criminal history. Dkt. 23 at 8. His Opposition, however, glosses over three

---

[4] There was a suggestion that the girlfriend in Arizona is now a former girlfriend and that Defendant's new girlfriend is the proposed third-party custodian, Ms. Worthy.

9

important considerations which cause this factor to weigh in favor of detention: (i) Defendant's lack of ties to the United States; (ii) Defendant's lack of candor with pretrial services; and (iii) the effectiveness of a third-party custodian.

Defendant has no family members in the United States. Nor does Defendant have close community ties to Phoenix, Arizona. Defendant has only lived in his current residence for two months and he could not confirm either his address or the amount of his rent for pretrial services. Indeed, Defendant's most significant tie in the United States appears to be his girlfriend, who is also alleged to be a member of the drug conspiracy. Moreover, Defendant has extensive ties abroad. His father and four sisters, with whom Defendant reports he is close, are in Jamaica. Defendant also has brothers in Jamaica and Japan. These facts elevate Defendant's risk of flight. *See United States v. Vasquez Molina*, 588 F. Supp. 2d 1, 2 (D.D.C. 2008) (ordering defendant detained where, "[t]he defendant has no prior criminal history but has no ties to the United States"). Additionally, as the government correctly notes, location monitoring only reduces a defendant's "head start should a defendant decide to flee" because the ankle monitor can be removed. *United States v. Wang*, 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023).

Not only does Defendant have no ties to the United States and extensive ties abroad, but Defendant made misrepresentations about his travel abroad, his resources, and his travel documentation to pretrial services. Defendant represented to pretrial services that his only travel in the past 10 years was to Jamaica for his mother's funeral. Contrary to the Pretrial Services Report, Special Agent Drew testified, and Defendant's Opposition now admits, that Defendant has traveled to Mexico. *Comp.* Dkt. 9 ("The defendant reported he possesses a valid U.S. passport located at his residence and stated within the last 10 years he traveled to Jamaica for his mother's funeral.") *with* 8.14.23 Hrg. Tr. at 17:12-18 (discussing Defendant's crossings into Mexico); Dkt. 23 ("It is true that Mr. Mitchell vacationed in Mexico at a popular tourist spot . . ."). The

10

government proffers that it has evidence of multiple such border crossings. Dkt. 19 at 9. Equally troubling, Defendant misrepresented his travel documentation. Defendant failed to inform pretrial services that he has a U.S. Passport Card or a Jamaican Passport until after the government filed its Motion. Defendant did not address his lack of candor in his Opposition. This lack of candor to pretrial services, and by extension to the Court, are troubling and raise issues about supervision where Defendant is being deceptive. *See United States v. Maxwell*, 510 F. Supp. 3d 165, 175 (S.D.N.Y. 2020) ("Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case.").

Although it is admirable that Ms. Worthy has volunteered to act as a third-party custodian for Defendant, there are concerns about whether her acting in that capacity would dissuade Defendant from absconding. Ms. Worthy is a friend of three years but did not know Defendant's current address. Pretrial services reports that Ms. Worthy did not refuse to provide a cash bond but cannot afford to do so. But the lack of direct consequences to Ms. Worthy, if Defendant absconds, decreases the "moral suasion" that a third-party custodian is intended to provide. *United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001). Moreover, Ms. Worthy, who acknowledges that Defendant has a drug problem, appears to lack influence over Defendant. *See id.* It is also unclear whether Ms. Worthy, who has not appeared and been examined before the Court, would have the ability to identify problematic behaviors to report them to pretrial services or to the Court. *See United States v. Bryant*, 2022 WL 413962, at *4 (S.D. W.Va. Feb. 9, 2022) (noting that the fact that the proposed third-party custodian was unaware of the defendant's charged criminal activities "could suggest that she would be unable to identify the presence of drug activity within the home"). Initially, it was unclear to the Court why Ms. Worthy was offering to be a third-party custodian, but, at the August 23, 2023, defense counsel revealed that Ms. Worthy

11

is a romantic partner. It is commendable that Ms. Worthy would offer to be a third-party custodian, but that does not mean that she is the kind of third-party custodian who can exert influence over and monitor Defendant. Thus, this element also weighs against release.[5]

## IV. CONCLUSION

The presumption of detention and an analysis of the § 3142(g) factors compel the conclusion that Defendant should be detained pending trial. In sum, the government has presented compelling evidence that Defendant engaged in drug trafficking, that Defendant has a drug problem that would incentivize him to continue seeking drugs, that his most serious tie to the United States – his girlfriend – is also involved in drug trafficking, that he has had no steady employment,[6] that he has extensive ties abroad, and that he made misrepresentations to pretrial services. Defendant has failed to rebut the presumption of dangerousness applicable in this case. Moreover, the government has established by a preponderance of the evidence that he is a risk of flight and no conditions or combination of conditions would ensure his appearance. Because Defendant presents both a risk of flight and a danger to the community, Defendant should not be released pending trial.

Accordingly, for the foregoing reasons, it is hereby ORDERED that the government's motion (Dkt. 19) is GRANTED; and it is

FURTHER ORDERED that Judge Davis' Order Setting Conditions of Release (Dkt. 14) is hereby REVOKED; and it is

---

[5] The fourth factor deals more directly with risk of dangerousness. Because the Court has already determined that Defendant has not rebutted the presumption of dangerousness and because this analysis focuses on risk of flight, this factor need not be addressed.

[6] At the August 23, 2023 hearing, defense counsel proffered that Defendant has an offer of employment with a restaurant in Phoenix. But this does not assuage the Court's concern that Defendant has not had steady employment in the past and that his prior sources of income are unverifiable.

FURTHER ORDERED that Defendant Aaron Alex Mitchell shall be detained pending trial.

It is SO ORDERED.

Alexandria, Virginia
August 23, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge